# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case. No. 22-CR-365 (KMM/DTS) |
| Plaintiff, | |
| v. | ORDER DENYING DEFENSE MOTION FOR RECONSIDERATION OF DETENTION |
| Damion Kent Hallmon, | |
| Defendant. | |

This matter is before the Court on the Motion (Dkt. No. 57) for Release from Custody of the defendant, Mr. Damion Kent Hallmon, and the Memorandum (Dkt. No. 60) in Opposition of the United States. The Motion is denied because it does not satisfy the statutory standard of presenting new information that is material to whether any conditions or set of conditions can assure Mr. Harmon's appearance in court and the safety of the community. 18 U.S.C. § 3142(f)(2)(B).

## PROCEDURAL HISTORY

A grand jury of this District indicted Mr. Hallmon on December 28, 2022 for the crime of possession of ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Indict., Dkt. No. 1.) The United States moved for pretrial detention of Mr. Hallmon at his initial appearance on December 29, 2022. (Hr'g Mins., Dkt. No. 8.) A combined arraignment and detention hearing was scheduled for January 3, 2023. (Hr'g Mins. Dkt. Nos. 14, 15.) At the January hearing, Mr. Hallmon stated he would forego a prompt detention hearing because he had detention holds in Minnesota state court

that would make any release from federal custody pointless; even if he prevailed in federal court, Mr. Hallmon would merely be moved from one jail to another. (*See* Hr'g Mins., Dkt. No. 15.) After inquiring of Mr. Hallmon, the Court found Mr. Hallmon's decision not to seek a detention hearing immediately was knowing, intelligent, and voluntary. While the Court orally granted the United States' motion for detention, the Court also noted that Mr. Hallmon reserved the prerogative of re-opening the issue of detention if circumstances changed. (Hr'g Mins., Dkt. No. 15.)

Two days later, before signing a written detention order, the Court directed (Dkt. No. 18) the parties to submit briefs on the question of whether the United States was authorized under 18 U.S.C. § 3142(f) to seek detention in this case at all. Following the review of submissions from Mr. Hallmon (Dkt. No. 22) and the United States (Dkt. No. 23), the Court decided on February 1 that a detention motion was authorized in this case and ordered Mr. Hallmon detained based on his January 3 waiver of an immediate detention hearing. (Order, Dkt. No. 33.) Mr. Hallmon appealed this decision to the district court judge (Def.'s Mot. Revoke Det., Dkt. No. 38) who denied the appeal (Order, Dkt. No. 45).

Mr. Hallmon next asked to have the detention hearing he previously agreed to postpone, his detention holds from Hennepin County notwithstanding. (Dkt. No. 47.)[1] A contested detention hearing was held on March 15, 2023, at the conclusion of which the Court ordered Mr. Hallmon detained, finding the record showed, by a preponderance of

---

1 On April 25, 2023, the Court was informed by U.S. Probation and Pretrial Services that Mr. Hallmon still has three holds in Hennepin County. This information makes the purpose of the present motion difficult to understand.

the evidence, that no condition or combination of conditions short of detention would reasonably assure Mr. Hallmon's appearance in court when required, and also finding that the record showed, by clear and convincing evidence, that Mr. Hallmon was a danger to any other person or to the community. A detention order was docketed on March 30, 2023 (Order, Dkt. No. 53). That detention order was followed by the instant motion for reopening of detention and release, filed on April 11, 2023. (Def.'s Mot. for Release from Custody, Dkt. No. 57.)

The motion asks the Court to reopen its prior consideration of detention now that Mr. Hallmon has been accepted into a residential chemical dependency program. (*Id.*) Counsel argues that "restricted and highly supervised terms of this program, along with any other restrictions placed on Mr. Hallmon by the Court" will be sufficient to ensure both Mr. Hallmon's appearance in court and the safety of the public. (*Id.*) The following day, April 12, the Court directed (Dkt. No. 59) the United States to respond to the motion and the United States responded on April 20, 2023 (Dkt. No. 60).

## SUBSTANCE ABUSE IN THE RECORD OF THIS CASE

As can be seen from the foregoing narrative, the litigation over detention in this case has been unusually extensive and prolonged. Litigation on the detention issue began in early January and continues today. The Court has entered six detention-related orders, four from the magistrate judge (Dkt. Nos. 18, 33, 40, 53) and two from the district court judge (Dkt. Nos. 43, 45). The parties have filed a total of seven briefs and memoranda, five by the defense (Dkt. Nos. 22, 38, 42, 47, 57) and two by the United States (Dkt. Nos. 23, 60).

3

Mr. Hallmon has appeared in court three times for hearings that have been either wholly or partially devoted to detention. As a result, the question of detention or release for Mr. Hallmon has been analyzed with unusual thoroughness, multiple times, by multiple participants in the court system.

Never before the filing of the instant motion was there even a suggestion of a connection between the allegations in the indictment and substance abuse, nor has Mr. Hallmon expressed a desire or need for treatment, nor has this Court's Probation and Pretrial Services Office recommended treatment. Surprisingly, no such claim is made even now. Mr. Hallmon's short release motion simply seeks to reassure the Court that security at the treatment program Mr. Hallmon wishes to attend is sufficient to assure Mr. Hallmon's presence in court and the safety of the community. (Def.'s Mot., Dkt. No. 57.) The closest there is to an assertion of a need for treatment is in a sealed attachment to Mr. Hallmon's release motion, in which the treatment provider explains the program and states that they have reviewed Mr. Hallmon's situation and are prepared to move forward with the admission process. (Decl. Jordan Kushner, Ex. 1, Dkt. No. 58-1.) No detail is provided about what the treatment provider found that caused them to conclude that treatment would be beneficial for Mr. Hallmon, for example whether any objective testing was conducted or whether any claim of chemical use disorder was substantiated.

In an interview with a Pretrial Services Officer immediately after being brought into federal custody, Mr. Hallmon stated that though he began drinking at age 13, he has not consumed alcohol in three years. (Dkt. No. 21 at 3.) He stated that he last used cocaine

in 2021. Mr. Hallmon used marijuana daily for years before he stopped use in August 2022. (*Id.*) In brief, the most that can be said on this record about Mr. Hallmon's use of mood-altering chemicals is that he might benefit from reducing, or perhaps discontinuing entirely, his use of mood-altering chemicals.

## THE PROPOSED TREATMENT PROGRAM

The sealed attachment to Mr. Hallmon's release motion describes the program that has agreed to accept him. (Kushner Decl. Ex. 1 at 2.) The program has a short-term program and a long-term program. (*Id.* at 3.) Both programs are residential and the facility where they are run is unlocked. (*Id.*) Participants are supervised 24 hours a day, except when they are away from the facility for medical and court appointments. (*Id.*)

The Court now turns to the issue of whether Mr. Hallmon's acceptance into this program is sufficient to re-open detention, and if so, whether the Court's earlier detention order should be set aside and Mr. Hallmon released. Because the Court finds re-opening of detention unwarranted, and because this conclusion leads to the denial of Mr. Hallmon's motion, the Court does not reach the question of whether Mr. Hallmon should be released.

## ANALYSIS

A detention hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue [of] whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person or the

community." 18 U.S.C. § 3142(f)(2)(B). In determining whether to reopen detention, a Court must ask (1) whether there is new information that was not known at the time of the hearing, and (2) whether this new information "has a material bearing on the issue" of detention. *See id.*

The Court first considers the question of whether Mr. Hallmon has presented the Court with information that "was not known to [Mr. Hallmon] at the time of the hearing." *Id.* The existence of substance abuse treatment programs and the fact that federal pretrial detainees are sometimes released on conditions that include participation in such programs are facts that were not just known but well known at the time of Mr. Hallmon's January arraignment/detention hearing and at the time of his March detention hearing. Also, based on past practice in criminal cases in this district, defense counsel might reasonably have apprehended that Mr. Hallmon could apply to such programs with a good chance of admittance. However, the standard is not whether the new information could reasonably have been known, but simply whether it was known. *Id.* The Court will accept that at the time of his detention hearing, Mr. Hallmon did not know he had been accepted into a treatment program.

This does not end the analysis. Mr. Hallmon must also show that this new information "is material to and has a substantial bearing on whether the defendant should remain detained." *United States v. Thomas Petters*, No. 08-CV-364 (RHK/AJB), 2009 WL 205188, at *2 (D. Minn. Jan. 28, 2009) (quoting *United States v. Archambault*, 240 F.Supp.2d 1082, 1084 (D.S.D. 2002)). Mr. Hallmon's acceptance into substance abuse

6

treatment is not material to the question of his detention. Detention in this case was premised on Mr. Hallmon's risk of nonappearance[2] and his risk of danger[3] to the community. Marijuana use, or the frequency of marijuana use, simply has no bearing on these factors, and Mr. Hallmon, in his memorandum, does not even try to claim that it does. His memorandum suggests that the conditions in the program will ensure that he appears for court and does not endanger the community. The fact that Mr. Hallmon, who has a well-documented history of flight, could receive treatment in a supervised but unlocked facility is not material to the Court's existing determination that there are no conditions at all short of detention that could adequately ensure that Mr. Hallmon appears for court and does not present a danger to the community.

Accordingly, based on all the files, records, and proceedings herein, Mr. Hallmon's motion to reopen detention is **DENIED** because the new information he proffers is immaterial to the question of detention.

Dated: April 27, 2023

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

---

[2] The undersigned has previously found Mr. Hallmon presents a risk of nonappearance, even after giving Mr. Hallmon the benefit of not considering *every single* failure to appear warrant which he challenged, because Mr. Hallmon has approximately nine aliases, has falsely identified himself to police officers, has a history of fleeing from police both on foot and in automobiles, and has previously absconded from supervision for three months. (Order of Det. 4–6, Dkt. No. 53)

[3] The undersigned previously found that Mr. Hallmon poses a risk of danger to the community, given the nature of the present charges, the strength of the prosecution's evidence, and Mr. Hallmon's extensive criminal record (Order of Det. 6, Dkt. No. 53.)